SARA BRODY, PLAINTIFF-RESPONDENT, v. ALBERT LIF-SON & SONS, INC., A CORPORATION, DEFENDANT-APPELLANT.

Argued January 10, 1955—Decided January 31, 1955.

384

*Mr. John F. Ryan* argued the cause for the appellant (*Messrs. Ryan & Saros,* attorneys).

*Mr. Stanley W. Greenfield* argued the cause for the respondent (*Mr. Francis A. Gordon,* attorney).

The opinion of the court was delivered by

BURLING, J. This is a civil action. The complaint was grounded in the alleged actionable negligence of the defendant, Albert Lifson & Sons, Inc., a New Jersey corporation, in the construction and maintenance of an exterior floor in the defendant's retail store at 221 Broad Street, Elizabeth, New Jersey. The plaintiff, Sara Brody, recovered a judgment in the Union County Court which was affirmed by the Superior Court, Appellate Division. We allowed certification on the defendant's petition therefor. *Brody v. Albert Lifson & Sons, Inc.*, 16 *N. J.* 205 (1954).

This matter may be classified as a variety of "slippery floor" case. The defendant's store at 221 Broad Street, Elizabeth, New Jersey, included an exterior vestibule. This vestibule extended about 16 feet from the sidewalk inwards to the entrance door. It was constructed in a tapering shape between show windows, being nine feet wide at the innermost point and 11 feet wide at the outermost point of the vestibule proper, a point at which it tapered widely to the street along the front of one of the show windows. It had a gradient of three-eighths of an inch to the foot, downward from the innermost point to the sidewalk. The floor of the vestibule was made of a composition termed terrazzo. This particular terrazzo was described as being composed of a mixture of Portland cement, sand, water and marble chips, laid rough and then ground down and polished to produce a smooth surface, bring out the color of the marble chips and make it ornamental.

The plaintiff produced an expert witness who had examined this particular floor. This expert testified that there were no abrasive materials in its surface. He testified it was slippery in its dry condition and if water was applied to its surface "it would become considerably slippery." He further testified that there is a standard practice, introduction of carborundum chips in the surface of the material to cut down the slipperiness of the surface, which was not applied in this particular floor. Also included in his testimony was the

assertion that there was a standard practice in wet or slippery weather "to incorporate rubber mats on the surface of the terrazzo." He testified this standard was "universally employed" and that "it is very slippery without the rubber mat."

An expert produced by the defendant testified that this particular floor conformed with the "accepted standards" and with the "building code of Elizabeth." He testified there was no standard requiring abrasives, but admitted that the composition of a terrazzo floor with abrasives as well as the composition of such a floor without abrasives was standard practice. This expert testified he was aware of no standard, as distinguished from a practice, in the engineering or construction fields, requiring the use of rubber mats on this type of terrazzo floor, but admitted he was acquainted with the use of such mats to cut down the slipperiness. The defendant's expert further testified that terrazzo "is made slipperier by water" and that if the "pitch" of the floor "were of such that would create a hill, a hazard" the use of an abrasive in the terrazzo would be required. However, he testified that "any pitch under three-quarters of an inch to the foot is considered a pitch that cannot be felt," and in his opinion a pitch of "an inch and a half, two inches" might require an abrasive.

The incident in question occurred on the evening of June 4, 1951, a warm summer night. The plaintiff testified she had been in Newark all day and was on her way home. It had been showering while she was on the bus which she used for transportation. It had stopped raining when she left the bus in Elizabeth. She crossed the street to Lifson's store. Lifson's store was closed. The windows were illuminated. The defendant admitted in the pretrial order that there was under all the circumstances an implied invitation to the public to enter the premises to view its merchandise display. The plaintiff testified she did not enter the vestibule for shelter from the rain but to view the display. She testified that as she "stepped from the sidewalk into the

foyer" she "went right down." When she slipped she went down on her right knee which as a result was "all broken up." There was considerable testimony, uncontradicted, as to the extent of the injury she thus sustained. The plaintiff testified the floor was "all wet" and aside from the water there was nothing else on the floor. She testified the floor was "like a piece of ice or glass." There had been rain before the occurrence and it rained afterwards, while she was sitting there before her removal to a hospital.

There was conflict in the testimony as to when the incident occurred and as to when the rain began. The plaintiff testified she fell about 8:00 P. M. The sky was cloudy while she was in Newark and there had been showers from 7:00 P. M. on. A meteorologist testified the rain began in Elizabeth at 8:30 P. M. But this report came from an observer of the Union County Park Commission. The chief of the Union County Park Police testified that the records of his office disclosed that the observer there observed the start of the rain at 8:10 P. M. and this would be reported to Trenton as of the half-hour, namely 8:30 P. M. An Elizabeth police officer testified without objection that a call was received from the police radio dispatcher at 8:47 P. M. reporting the plaintiff's fall.

This presents the focal evidence. After a full trial the jury returned a verdict for the plaintiff. The defendant's motion for new trial was denied and judgment was entered on the verdict. As hereinbefore noted, the Superior Court, Appellate Division, affirmed the judgment and we allowed certification on the defendant's petition therefor.

The principal questions involved on this appeal are: (a) whether under the circumstances of this case the plaintiff was required to prove the defendant had reasonable notice of the slippery condition of the floor (in the motions made during the trial emphasis was made by the plaintiff that there was a condition created by the nature of the floor and the moisture caused by rainfall); (b) whether expert testimony concerning the effect of water on this floor was admis-

sible; and (c) whether the evidence was sufficient to require submission of the case to the jury.

I.

It is settled that to render a person liable on the theory of negligence there must be some breach of duty, by action or inaction, on the part of the defendant to the individual complaining, the observance of which duty would have averted or avoided the injury. And it is equally well established that the basic duty in a case of this type is that the proprietor of premises, to which the public is invited for business purposes of the proprietor, owes a duty to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation. See, for example, *Bohn v. Hudson & Manhattan R. Co.*, 16 *N. J.* 180, 184–185 (1954). The defendant in the present case admitted the invitation and the basic duty. The evidence supports a reasonable inference that the plaintiff entered the defendant's premises on the strength of the invitation for the purpose intended by the defendant.

In the *Bohn* case, *supra,* we held that the duty existing, frequently the result has turned upon notice of the defective condition, direct or imputed by proof of adequate opportunity to discover the defective condition (16 *N. J.*, at *pages* 186–187). It is this principle that is invoked in the present case by the defendant. This case, however, is not subject to unqualified application of that philosophy. We have not, in the circumstances here presented, a defective condition arising either suddenly or by wear over a period of time, nor an uncommon accumulation of water.

The present matter lies within the confines of the rule that a negligent act may be one which "creates a situation which involves an unreasonable risk to another because of the expectable action of the other * * * or a force of nature." This rule is set forth in *sec.* 302(*b*) of 2 *American Law Institute, Restatement of the Law, Torts* (*Negligence*)

(1934), *p.* 814, and as such has the persuasive authority resulting from the scholarship and study of the members of the Institute who agreed to them. *Price and Bittner, Effective Legal Research* (1953), *p.* 211. The force of nature adverted to in this expression of legal duty is a "normal" one, that is, a force which operates constantly, or periodically, or with a certain degree of frequency. *Restatement, Torts, ubi supra, pp.* 816–817. *Cf. Clark v. Public Service Electric Co.*, 86 *N. J. L.* 144, 153 (*E. & A.* 1914). The "ordinary forces of nature such as wind, or a rainstorm * * * which are usual at the time and place, are conditions which reasonably could have been anticipated. * * *" 65 *C. J. S., Negligence*, § 115, *pp.* 705–706. *Cf. Harper on Torts* (1933), *sec.* 119, *p.* 270; *sec.* 120, *p.* 271. Compare *DeCicco v. Marlou Holding Co.*, 24 *N. J. Misc.* 3, 6 (*Cir. Ct.* 1945); same case affirmed after trial, 137 *N. J. L.* 186, 187, 189–190 (*E. & A.* 1948).

In the present case there was evidence from which a jury could reasonably infer that the construction of the floor rendered it peculiarly liable to become slippery by virtue of introduction of water thereon and that the defendant omitted precautions which would have been practical or reasonable under the circumstances of this case.

It is noted in passing that without the presence of water a combination of the proven factors of intrinsic slipperiness of the flooring, sloping of the floor, location of the vestibule and absence of use of customary precautions to prevent slipping has been held adequate evidence of negligence to warrant the submission of the matter to a jury. *Deschamps v. L. Bamberger & Co.*, 128 *N. J. L.* 527, 529–530 (*Sup. Ct.* 1942), affirmed for the reasons expressed in the opinion of the former Supreme Court, 129 *N. J. L.* 517, 518 (*E. & A.* 1943).

The defendant, *inter alia,* relied strongly on *Bodine v. Goerke Co.*, 102 *N. J. L.* 642 (*E. & A.* 1926). This case is distinguishable. In the *Bodine* case, *supra,* the alleged cause was the slippery quality of snow or slush *per se.* In the

*Clark* case, *supra,* and in the present case the alleged cause is the intrinsic quality of the material used or condition created by the defendant when exposed to normal weather conditions. This is an intrinsic substance case, not a foreign substance case. Therefore it is not ruled by the "waxed floor," "pool of water," "grease spot" or "defective or worn tread" cases, where the foreign substance or extra-normal condition of the premises is alleged to be the cause of an injury.

Elsewhere recovery has been permitted where the presence of rain or moisture has existed with intrinsic slipperiness of the flooring as a necessary ingredient of the alleged breach of duty. *Cardall v. Shartenberg's, Inc.,* 69 *R. I.* 97, 31 *A. 2d* 12 (*Sup. Ct.* 1943); *Erickson v. Walgreen Drug Co.,* 232 *P. 2d* 210, 211, 213, 31 *A. L. R. 2d* 177 (*Utah Sup. Ct.* 1951); and *W. T. Grant Co. v. Karren,* 190 *F. 2d* 710, 711–712 (10*th Cir.,* 1951). In *Barker v. Silverforb,* 201 *S. W. 2d* 408, 414–416 (*Mo. App.* 1947), the inherent quality of terrazzo flooring was considered significant coupled with other factors in sustaining a plaintiff's judgment. Compare *Moors v. Boston Elevated Ry. Co.,* 305 *Mass.* 81, 25 *N. E. 2d* 171, 172 (*Mass. Sup. Jud. Ct.* 1940); *Becker v. David,* 86 *U. S. App. D. C.* 347, 182 *F. 2d* 243 (*D. C. Ct. App.* 1950).

The postulate upon which the present case was submitted in the charge to the jury conformed to the principles hereinbefore discussed and there was no error in the submission of the issue of negligence to the jury. Where fair-minded men may honestly differ as to the conclusion to be drawn from disputed facts, or as to the disputed inferences to be drawn from undisputed facts, a case must be submitted to a jury, and such course was properly pursued here. *Bazinsky v. Conklin,* 8 *N. J.* 40, 43 (1951).

II.

The second question involved is whether the trial court committed prejudicial error in permitting the plain-

tiff's expert to testify as to the effect of water's introduction onto terrazzo flooring. The defendant contended that the fact that water makes terrazzo slippery is a matter of common knowledge and therefore the testimony was inadmissible. See *Dodge v. Johns-Manville Sales Corp.*, 129 *N. J. L.* 65, 69 (*E. & A.* 1942).

On this point we are in disagreement with the defendant's assumption that the matter of the inherent slippery characteristics of terrazzo, or the effect of moisture thereon, is a matter of common knowledge. Nevertheless the testimony on this subject was harmless because it was in accord with the views the defendant asserted were encompassed by common knowledge.

## III.

Included in the questions involved was the question whether the trial court erroneously refused to instruct the jury as requested by the defendant. The request was directed to the matter of notice and was not applicable to the principles of law involved in this case.

## CONCLUSION

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.