Alexander **CRISPINO**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 402–54.

United States District Court
D. New Jersey.

Nov. 18, 1955.

———————◆———————

Baker, Garber & Chazen, by Milton Garber, Hoboken, N. J., for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., by Hamilton F. Kean, Asst. U. S. Atty., Newark, N. J., for defendant.

WORTENDYKE, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, for personal injuries which the plaintiff claims he sustained by reason of a fall alleged to have been the proximate result of the negligence of the defendant and its employees.

Findings of Fact

On January 13, 1953, plaintiff was employed as a longshoreman by Imparato Stevedoring Corporation, an independent contractor with the defendant, and was working on premises of the defendant, known as Bayonne Naval Supply Depot, located in Hudson County, New Jersey. Upon the completion of his work for that day at about 6:00 p. m., plaintiff, along with numerous other longshoremen, entered the trailer of a tractor-trailer owned and operated by the defendant, to be transported from the vicinity of his work to the exit gate of the depot. This was a routine procedure and the trailer used for transporting the longshoremen had been especially converted for the purpose.

The trailer from which the plaintiff allegedly fell was entirely enclosed, except at the rear. The interior of the trailer, which measured seven feet one inch in width, was equipped with three parallel benches which ran almost the entire length of the interior. Two of these benches were adjacent to the sides of the trailer and the third was in the middle of the trailer floor. Two parallel handrails were fastened to the roof of the trailer directly over the two aisles between the benches. These handrails were six feet one inch from the trailer floor. The floor level of the trailer was approximately four feet above the ground level, and at the rear of the trailer there was provided a barrier consisting as follows. Affixed to each side of the interior, at a height of approximately three feet from the floor, were metal pipes which extended horizontally inward two feet four

inches from each side, and thence downward to the floor, leaving a space of two feet five inches in the middle for the ingress and egress of passengers. When not being used for ascent or descent, ladder-like steps, about four feet in length, and hinged at the floor level, were swung up in a vertical position and fastened between the metal pipes, thus affording a continuity of barrier at the rear of the trailer. In addition to this barrier there was a chain which, when the steps were raised, was fastened so that it stretched across the rear of the trailer at a height of approximately three feet from the floor of the trailer.

On the occasion involved in this proceeding, the plaintiff was among the last of the longshoremen to enter the trailer. The number of longshoremen to be transported well exceeded the seating capacity of the benches, and the plaintiff took a standing position about a foot and a half from the rear edge of the trailer floor, which appears to have been as far forward as he could stand because of the crowded condition of the trailer. After the trailer had been loaded, the driver raised and secured the steps and fastened the chain across the rear of the trailer from one side to the other. The driver then entered the tractor and commenced the journey to the exit gate of the depot, a distance of some two miles. In spite of the fact that there may have been a sign in the interior of the trailer reading "Standing Not Permitted While Vehicle Is In Motion", no evidence was offered by the defendant that if such a rule existed any attempt had been made to enforce it, and it apparently was not unusual for several standees to ride in the trailer when the benches were occupied. It was not made clear whether the handrails affixed to the roof of the trailer were for the use of standees or merely for the aid of persons when walking along the aisles in the process of boarding or leaving the trailer. In any case, care had been taken by the defendant to protect even standees from falling out of the rear of the trailer while it was in the normal course of transporting persons between the depot gate and the docks. Under the circumstances, it was not urged that plaintiff assumed any risk solely by virtue of being a standee.

According to the plaintiff, who is approximately five feet eight inches in height, he was holding onto one of the handrails as the tractor-trailer approached the exit gate. He estimated that the vehicle was traveling at a speed of 20 to 25 miles an hour when it was suddenly stopped approximately 100 feet short of its destination. Plaintiff testified that this sudden stop somehow caused him to be thrown out of the trailer onto the ground. Other witnesses who testified —two longshoremen riding with the plaintiff in the trailer, a pedestrian, and the driver of the tractor—provided three different versions of the movements of the tractor-trailer as it approached the exit gate of the depot. One of the longshoremen, who said he was standing near the plaintiff, testified that the vehicle came to a sudden stop and then started forward, proceeding a short distance to its destination. This witness further testified that he was thrown off balance and at the same time saw the plaintiff's body go over the rear barrier. The other longshoreman, who was standing near the rear of the trailer, testified that the vehicle stopped short and thereafter pulled ahead, but he subsequently admitted that any jarring occasioned by the stopping and starting was slight. This witness did not see the plaintiff fall from the trailer but testified that he observed the plaintiff lying on the ground. The pedestrian, called by the defendant, testified that while she was standing within the exit gate of the depot waiting for a bus she observed the tractor-trailer slowly approaching the gate. She said she saw the ladder at the rear of the vehicle being let down, by someone other than the driver, while the vehicle was still in motion. She also observed a man on the steps of the ladder as its foot struck the ground and saw him fall to the pavement and then pick himself up. She was unable to identify the man who fell as the plaintiff. This witness

was not able to say whether the truck came to a stop before it reached its final destination, but she did notice that when the ladder struck the pavement, it jarred the trailer and the vehicle stopped completely until all of the passengers had alighted. The driver of the tractor testified that he traveled toward the exit gate at a speed of from 15 to 17 miles an hour and that, when some distance therefrom, he applied his brakes gently and brought his vehicle to a complete stop about five or seven feet from the gate house. He was then requested by a fellow-employee, sitting alongside of him in the cab of the truck, to pull up nearer to the depot gate house. The witness testified that in letting in his clutch he may have caused a slight jerk of the tractor-trailer. He then alighted and went to the rear of the trailer for the purpose of lowering the steps to permit the egress of the longshoremen from within the trailer, but when he arrived at the rear, he found the steps to be down and longshoremen already descending. He did not notice the plaintiff among them nor did he see anyone lying on the ground.

■ Although the testimony is conflicting in some respects, it is clear that the evidence does not support a finding that the plaintiff, while in the standing position which he described, was thrown out of the trailer. It is the plaintiff's contention that a sudden stop of the vehicle caused him to lose his grip on the handrail and to be thrown over the barrier at the rear. But such a sudden stop, if it occurred, would necessarily have thrown the plaintiff forward towards the front of the trailer and against other persons riding with him. The barrier at the rear was certainly adequate to prevent a person of the height of the plaintiff from falling out if he were off-balance when the vehicle commenced to move forward with what the evidence shows was at most a slight jerk. Even if the conflicts in the testimony were resolved in a manner most favorable to the plaintiff's contention, that contention is not plausible. However, I do not find as a matter of fact that there was either excessive speed or sudden stopping or starting of the trailer truck but that, as testified by one of the plaintiff's own witnesses, whatever jarring occurred in the course of the movements of the tractor-trailer was slight.

Moreover, although plaintiff complains of injuries to his left wrist, hip, knee and ankle, much of his testimony and that of the medical experts related only to his wrist. Less than two months prior to his alleged fall, the plaintiff had been involved in another accident which resulted in a fracture of his left wrist. The overwhelming weight of the medical testimony, based upon a comparison of the X-rays taken after the first and second accidents and examinations of the wrist, negatived the existence of any new injury to the wrist or any aggravation of the earlier injury.

Conclusions of Law

This Court has jurisdiction of the subject matter of this action and of the parties hereto.

■ The plaintiff has failed to establish a right to any recovery from the defendant. The Federal Tort Claims Act, 28 U.S.C. § 1346(b), permits recovery for personal injuries caused by the negligent or wrongful act or omission of any employee of the United States, but only under circumstances which would create liability under the law of the State in which the injuries occurred. Under the law of the State of New Jersey, to render a defendant liable on the theory of negligence requires a showing that there was a breach of duty, by action or inaction, on the part of the defendant to the individual complaining, the observance of which duty would have averted or avoided the injury. Brody v. Albert Lifson & Sons, 1955, 17 N.J. 383, 111 A.2d 504. The plaintiff in this case has failed to establish that the defendant or its employees breached any duty owing to him. Consequently, the plaintiff is not entitled to recover from the defendant for his injuries, if any.

Judgment should be entered in favor of the defendant and against the plaintiff. An order may be submitted in accordance with the foregoing findings and conclusions.