**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4994-17T3

JARRET RASNOW,

     Plaintiff-Appellant,

v.

HARMON COVE TOWERS
CONDOMINIUM ASSOCIATION,

     Defendant,

and

HARMON COVE TOWERS I
CONDOMINIUM ASSOCIATION,
and TAYLOR MANAGEMENT
COMPANY,

     Defendants-Respondents,

and

HARMON COVE TOWERS
CONDOMINIUM ASSOCIATION,
HARMON COVE TOWERS I
CONDOMINIUM ASSOCIATION,
and TAYLOR MANAGEMENT
COMPANY,

Defendants/Third-Party
Plaintiffs,

v.

DELTA BUILDING SERVICES,

Third-Party Defendant.
_____

Argued March 19, 2019 – Decided April 9, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4942-16.

Martin F. Kronberg argued the cause for appellant.

Laura A. Lelio argued the cause for respondents (Faust Goetz Schenker & Blee, LLP, attorneys; Laura A. Lelio, on the brief).

PER CURIAM

In this slip-and-fall personal injury matter, plaintiff Jarret Rasnow appeals from a summary judgment order dismissing his complaint against defendants Harmon Cove Towers I Condominium Association (Association) and Taylor Management Company (Taylor), and from an order denying his motion for reconsideration. After reviewing the record, the parties' arguments, and the applicable legal principles, we reverse and remand for further proceedings.

A-4994-17T3

I.

We discern the following facts from the record. Plaintiff slipped on an allegedly wet stair in a stairwell in Harmon Cove Towers I, the condominium building where he lived, fracturing his right ankle. While at the bottom of the stairwell, plaintiff saw a liquid dripping from the stair upon which he slipped. According to plaintiff, on several prior occasions he saw people carrying beverages while using the stairwell.

Mark Steih, who performed maintenance work at the condominium, testified at his deposition that he was called to respond to prior incidents in which someone "spilled something in the elevator," and had responded to multiple reports that someone, or an animal, urinated in the elevator. Sergio Baptise, a building security officer, similarly testified that he received calls about animals urinating in an elevator around "once every two weeks." In addition, plaintiff's expert, Robert S. Bertman, a New Jersey licensed engineer, stated in his report that he conducted a site inspection of the condominium building, and "witnessed several residents descending the incident stairs with small dogs that were allowed in the building."

At or near the close of discovery, defendants filed a motion for summary judgment. Relying on Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559 (2003),

they argued that plaintiff's claims should be dismissed because neither the Association, who was responsible for maintenance, nor Taylor who was hired by the Association to manage the common elements, including the stairways, had actual or constructive notice of any wetness on the stairs, or of a dangerous condition. In addition, defendants claimed Bertman's expert report contained inadmissible net opinions.

In opposition to the motion, plaintiff argued that defendants "had a perfectly good set of stairs made out of concrete … [b]ut what [defendants] did was they painted [the stairs] and they made [the stairs] more slippery." That conduct, according to plaintiff, converted this case into "an intrinsic substance case" under Brody v. Albert Lipson & Sons, Inc., 17 N.J. 383 (1955). Plaintiff explained that in such cases notice is not required.

In support of his argument, plaintiff relied upon Bertman's expert report, which Bertman prepared after his site inspection and after interviewing plaintiff. Bertman's report provided that at the time of the accident, plaintiff was wearing sneakers with "rubber soles that were in excellent condition and would normally prevent any slip and fall from a dry surface or from a surface that had any type of traction surface." Bertman inspected the stairwell and

4

noted the landings and stairs were constructed of concrete and the concrete floor was painted with a dark brown epoxy paint.

According to Bertman, the Building Officials and Code Administrators International, Inc.'s model code, known as the BOCA National Building Code, requires all "walking surfaces, including . . . stairways . . . [to] have a slip resistant surface." In addition, Bertman relied upon an American National Standards Institute (ANSI) standard that provides that "unless otherwise specified, . . . interior spaces expected to be walked upon when wet shall have a wet [dynamic coefficient of friction (COF)] of 0.42 or greater." Bertman also relied upon the American Society of Testing Material (ASTM) "Standard Practice for Safe Walking Surfaces," which states that "painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable."

Bertman measured the COF of the painted concrete floor both when the floor was dry and after wetting it with water. He determined the COF of the dry floor yielded a result of 0.66, which he conceded would "meet the minimum criteria for being classified as slip-resistant." He found "[t]he test results for the wet painted concrete floor were significantly lower and varied in

the range from 0.47 – 0.50" in dynamic COF. Bertman acknowledged that this score "marginally met the minimum criteria for being classified as slip resistant when exposed to water and likely would have created a significant slip and fall hazard with any foreign fluid that was more viscous or more slippery than water." However, he further opined that his:

> [i]nspection confirmed that the painted concrete steps were indeed slippery when wetted with a foreign substance. The paint that was applied did not contain any grit or abrasive material that would have dramatically improved the traction surface of the stair tread. In fact, the paint that was applied on top of the concrete actually made the tread surface smoother and less porous so than any liquid that was applied would sit on top of the painted surface and would not wick into the more porous concrete.

Further, according to Bertman, he "dragged the heel of [his] boot across the wetted step and the step did not prevent slippage due to the absence of any grit, grooves, or traction surface in the painted surfaces of the step." In addition, he stated in his report that "[t]he floor should have contained grit or grooves to provide the proper traction surface, especially considering that the incident floor surface was within a stairwell that [was] part of the primary means of egress for the building and should have designed to accommodate people hurrying down the stairs in the event of an actual emergency." Finally, Bertman concluded that "[h]ad the incident stairway been designed with the

6

grit, abrasive surface, or grooves in the tread surfaces, [plaintiff's] injuring incident would likely not have occurred."

The court issued an order on April 27, 2018, granting defendants summary judgment. In an addendum to that order, the court relied on Nisivoccia, and explained that summary judgment was appropriate because there was no evidence from which a jury could reasonably infer that defendants had constructive notice of the particular wetness that was allegedly on the stairway. Notably, the court did not base its decision on defendant's argument that Bertman's expert report included inadmissible net opinions.

Plaintiff filed a motion for reconsideration and argued that in granting summary judgment, the court overlooked the Brody decision. During oral arguments, the court characterized Bertman's opinion that the floor "marginally met the minimum criteria for being classified as slip resistant when exposed to water and likely would have created a significant slip and fall hazard with any foreign fluid that was more viscous or more slippery than water," as a net opinion.

The court denied plaintiff's reconsideration application and in an accompanying written statement of reasons concluded:

> The [c]ourt considered the arguments pursuant to Brody v. Albert Lipson & Sons, Inc., 17 [N.J.] 383

(1955) and found them inapplicable to the case at bar. Plaintiff's expert here found that the stairs where [p]laintiff's alleged injury took place met the minimum standard to be considered "slip resistant" when water was applied to the surface. The arguments related to other safety requirements, i.e. crosscuts in the stairs, are not per se requirements such that without them the stairwell at issue is rendered "defective." Indeed, the Brody [c]ourt noted that there was evidence presented from which a jury could "reasonably infer that the construction of the floor rendered it peculiarly liable to become slippery by virtue of the introduction of water thereon and that the defendant omitted precautions which would have been practical or reasonable under the circumstances of [that] case." The [c]ourt determines that [p]laintiff's expert's finding that, even with water applied, the surface at issue meets the accepted standards to be considered "slip resistant" could not lead a reasonable jury to find that the construction of the surface rendered it peculiarly liable. Thus, this case falls outside of the rationale of Brody, and thus notice would be required.

## II.

On appeal, plaintiff asserts the trial court erred when it rejected his argument that because defendants were responsible for creating the dangerous condition on the stairway, he was not required to prove either actual or constructive notice. He also maintains the court committed error when, on reconsideration, it concluded Bertman's expert report contained an inadmissible net opinion.

8

A prima facie case of negligence "requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). "[A] condominium association has a duty to exercise reasonable care to protect the condominium's residents from a dangerous condition on property within the ambit of the common elements," McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 141–42 (2018), which includes stairways, N.J.S.A. 46:8B-3(d)(ii). "Specifically, N.J.S.A. 46:8B-14(a) states that a condominium association shall be responsible for the performance of 'the maintenance, repair, replacement, cleaning and sanitation of the common elements.'" Lechler v. 303 Sunset Ave. Condo. Ass'n, Inc., 452 N.J. Super. 574, 585–86 (App. Div. 2017) (quoting N.J.S.A. 46:8B-14(a)); see id. at 577 (holding the condominium association "had a statutory duty to maintain the common areas, including a duty to identify and correct dangerous conditions, and that duty extended to residents of the condominium building").

The issue raised by this appeal requires the court to address the second element of plaintiff's prima facie case - whether defendants breached a duty of care. Under New Jersey law, there are two distinct theories of recovery in a slip-and-fall personal injury action. When an alleged dangerous condition is

not caused by defendant, a plaintiff must establish actual or constructive notice. However, where the defendant's actions create a foreseeable risk of harm, an injured plaintiff need not prove either actual or constructive notice. Tymczyszn v. Columbus Gardens, 422 N.J. Super. 253, 264 (App. Div. 2011); Smith v. First National Stores, 94 N.J. Super. 462, 466 (App. Div. 1967); Maugeri v. Great Atlantic & Pacific Tea Company, 357 F.2d 202, 203 (3d Cir. 1966); Model Jury Charge (Civil), 5.20F(5), (9) (rev. Mar. 2017). Because a reasonable jury could find defendants created a dangerous condition that caused plaintiff to slip and fall, and that the wetness in the staircase was foreseeable, we conclude the court erred in requiring plaintiff to establish defendants had actual or constructive notice. See Brody, 17 N.J. at 389-91.

In Brody, plaintiff sustained injuries when she slipped and fell in the exterior vestibule of a retail store. Id. at 386–88. The floor of the vestibule was made of "terrazzo" tile "composed of a mixture of Portland cement, sand, water and marble chips, laid rough and then ground down and polished to produce a smooth surface . . . ." Id. at 386. In addition to its polished surface, the tile floor was sloped down, at a grade of three-eighths of an inch to a foot. Ibid.

Plaintiff's expert testified that there were no abrasive materials on the surface of the floor and "if water were applied to its surface 'it would become considerably slippery.'" Ibid. The expert also testified that it was standard industry practice to add carborundum chips to the "surface of the material to cut down the slipperiness of the surface," which had not been done. Ibid.

The Court in Brody determined that actual or constructive notice was not required under the circumstances because plaintiff had presented sufficient evidence "from which a jury could reasonably infer that the construction of the floor rendered it peculiarly liable to become slippery by virtue of introduction of water thereon and that defendant omitted precautions which would have been practical or reasonable under the circumstances . . . ." Id. at 390. In reaching its conclusion, the Court noted the presence of water, the "intrinsic slipperiness" of the terrazzo, the slope of the floor, the location of the vestibule, and the failure to use "customary precautions to prevent slipping . . . ." Ibid.

The Nisivoccia decision relied upon by the trial court does not compel a contrary result. In that mode-of-operation case, the Court stated the general rule that to establish a breach of duty in a premises-liability action, a plaintiff ordinarily must show the defendant "had actual or constructive knowledge of

11

the dangerous condition" that caused the plaintiff's injuries. Nisivoccia, 175 N.J. at 563. However, the Court explained that in circumstances where "a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents," a plaintiff is relieved of the obligation to establish actual or constructive notice. Ibid. (emphasis added). As noted, the improperly painted floor was a condition of the property that, according to Bertman, was a dangerous condition created by defendants.

Moreover, the presence of a foreign substance on the stairway does not alter our analysis. A reasonable interpretation of Bertman's report permits a finding that the liquid plaintiff saw dripping from the step "was only a catalyst for the dangerous condition" created by painting the concrete stairs without applying an abrasive additive to provide traction when the floor became wet. See Graham v. Cedar Point, Inc., 707 N.E.2d 554, 555, 557 (Ohio Ct. App. 1997) (a factfinder could conclude that defendants breached a duty of care by repeatedly painting concrete stairs without replenishing an abrasive additive embedded in the initial paint when wetness was foreseeable).

We need not discuss at length the principle that courts reviewing summary judgment motions must "consider whether the competent evidential

materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). Although the non-moving party must have "more than a scintilla of evidence" in its favor to defeat the motion, Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2019), the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). We review summary judgment rulings de novo, under the same standard governing the motion judge's initial decision. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

Here, plaintiff's complaint asserted defendants negligently maintained the premises "so as to cause a dangerous condition to exist" on the premises, and that he sustained permanent injuries as a "direct and proximate" result. Affording plaintiff all reasonable inferences from the summary judgment record, the floor of the stairway where plaintiff fell was painted with an epoxy material that did not contain "an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where

wet conditions may be reasonably foreseeable" as required by applicable ASTM standards. Bertman concluded that "the wetted condition of the stair tread artificially created an unsafe surface and an unsafe condition which was the root cause" of plaintiff's slip and fall and had the stairway been "designed with the grit, abrasive surface, or grooves in the tread surfaces," plaintiff's injury "would likely not have occurred." As defendant created the dangerous condition that caused plaintiff's fall, (i.e., an improperly painted stairway), constructive or actual notice was not a required element of plaintiff's cause of action and genuine issues of material fact existed as to whether defendants breached their duty of care sufficient to deny summary judgment.

We also agree with plaintiff that on the record before us, Bertman's conclusion that the stairwell was maintained in a dangerous condition was not an inadmissible net opinion, notwithstanding his finding that the floor marginally met the minimum COF metric under the ANSI standard.[1]

---

[1] As noted, when it granted defendants' summary judgment motion, the court based its decision on defendant's lack of constructive notice. It did not conclude that Bertman's report constituted an inadmissible net opinion. Further, at the reconsideration hearing, the court merely stated that Bertman's COF opinion was a "net opinion." We understand from defendants' briefs and counsel's representations at oral argument that defendants advanced additional arguments during the summary judgment proceedings to support their position that Bertman's report contained inadmissible net opinions. Nothing in our

(continued)

A-4994-17T3

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "The rule requires that an expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). However, "[t]he failure of an expert to give weight to a factor thought important by an adverse party does not reduce his [or her] testimony to an inadmissible net opinion if he [or she] otherwise offers sufficient reasons which logically support his [or her] opinion." Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002) (citing State v. Freeman, 223 N.J. Super. 92 (App. Div. 1988)). "Rather, such an omission merely becomes a proper 'subject of exploration and cross-examination at a trial.'" Ibid. (citing Rubanick, 242 N.J. Super. 36, 55 (App. Div. 1990)).

Here, defendants' expert report acknowledged the ANSI standard set forth the "industry standard for safe walking surfaces under wet conditions."

(continued)
opinion should be interpreted as precluding defendant from renewing those additional arguments on remand.

15

The ANSI standard also provided that flooring materials with "a [COF] of 0.42 or greater are not necessarily suitable for all projects" and that "[b]ecause many variables affect the risk of a slip occurring, the COF shall not be the only factor in determining the appropriateness of a tile for a particular application." According to Bertman's report, some of those variables include "type of use, traffic," and "how drainage takes place if liquids are involved." Further, the ANSI standard referenced in Bertman's report also states that the COF "does not predict the likelihood a person will or will not slip," and that the COF is only one of many factors affecting the possibility of a slip occurring. Therefore, we disagree with the trial court's determination that Bertman's finding of minimal compliance with the COF metric when the floor was wet with water precluded any finding that the floor was in a dangerous condition at the time of plaintiff's fall.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4994-17T3