**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4947-18T3

TONY PING YEW,

    Plaintiff-Appellant,

v.

FMI INSURANCE COMPANY,

    Defendant-Respondent.

_____

Submitted May 11, 2020 – Decided June 22, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. DC-000912-19.

Tony Ping Yew, appellant pro se.

Methfessel & Werbel, attorneys for respondent (James Victor Mazewski, of counsel and on the brief).

PER CURIAM

Defendant FMI Insurance Company insured plaintiff Tony Ping Yew under a homeowner's policy when Yew's sump pump failed on March 3, 2018,

and damaged his home. But, his policy excluded coverage for water damage caused by sump pump failure. In his suit against FMI, Yew alleged it was negligent and breached the covenant of good faith and fair dealing, because it failed to advise him that he could add supplementary sump pump coverage each year he renewed his policy. In granting FMI's motion for summary judgment, the trial court found no legal basis for the negligence and bad faith claim, observing that FMI had notified Yew of the optional coverage in advance of a policy renewal several years earlier, and the Department of Banking and Insurance (DOBI) had rejected Yew's administrative complaint.

Yew appeals from summary judgment and the denial of his motion for reconsideration. Having reviewed Yew's arguments in light of the record and applicable law, we affirm.

Yew had been insured by FMI for many years. Back in 2012, he received, along with a general renewal notice, a "special notice" from FMI informing him that FMI was consolidating all sump pump coverage in a separate endorsement that he could add to his policy for an additional premium; and, if he did not affirmatively select the coverage, his policy would exclude claims for damage caused by sump pump failure. The notice stated:

A-4947-18T3

## SPECIAL NOTICE TO POLICYHOLDERS
## SUMP PUMP FAILURE SUPPLEMENTAL COVERAGE

If you have a working sump pump in your home, this notice applies to you.

WHAT HAS FMI DONE?

FMI has consolidated all coverage for damage caused by overflow or failure of a sump pump, including resulting mold damage, into one endorsement – FM 152. If endorsement FM 152 is not attached to your policy, there is no coverage for this damage in any other form or endorsement attached to your policy. FMI has also increased the amount of insurance you can purchase for this coverage from a minimum of $3,000 to a maximum of $10,000.

WHAT MUST YOU DO?

If you wish to add, continue or increase coverage for damage caused by overflow or failure of a sump pump, including resulting mold damage, you must complete the COVERAGE SELECTION shown below, sign this Notice and return it to us in the enclosed envelope. We will send a bill for the amount of insurance you have selected.

WHAT WILL HAPPEN IF YOU DO NOTHING?

If you do nothing, your policy will automatically exclude all damage caused by overflow or failure of a sump pump.

The notice then included a list of optional coverage amounts, ranging between $3000 and $10,000, with accompanying premiums.

A-4947-18T3

Yew admitted he saw the notice, but elected not to purchase the coverage. He stated in his complaint, "Plaintiff being a busy person like most people, just signed off the renewal form, pa[id] his premium and d[id] not bother to investigate further . . . ." FMI did not send a similar notice, specifically addressing the optional sump pump coverage, with subsequent renewal notices.

After flooding from his sump pump damaged his basement in 2018, Yew filed a claim under his homeowner's policy. FMI denied the claim, noting that Yew had not selected the sump pump endorsement, and the policy excluded coverage for the damage. Yew asked DOBI to review FMI's decision. DOBI conducted a formal investigation, and concluded FMI's denial of Yew's claim did not violate any insurance laws or regulations.

In his subsequent pro se complaint against FMI, Yew alleged that FMI acted negligently and in bad faith by failing to notify him annually that supplemental sump pump coverage was available. Had FMI done so, he alleges not that he would have purchased it; but that he would have secured coverage from a different insurer at a lower price.

FMI eventually moved for summary judgment, arguing it did not owe Yew a duty to advise him about supplemental coverage every year. FMI argued that the standard relationship between a carrier or its agents and its insured did not

A-4947-18T3

oblige the carrier to advise the insured of the possible need for higher policy limits.  As noted, the trial court granted FMI's motion.

We review a summary judgment order de novo, applying the same standard a trial court uses.  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014).  Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

It is well-settled that "to render a person liable on the theory of negligence there must be some breach of duty, by action or inaction, on the part of the defendant to the individual complaining, the observance of which duty would have averted or avoided the injury."  Brody v. Albert Lifson & Sons, Inc., 17 N.J. 383, 389 (1955).  The existence of a duty "is largely a question of fairness or policy," and "'[t]he inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solutions.'"  Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991) (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984)).  Whether a duty exists may depend on the facts of the case.  Ibid.

A-4947-18T3

A contractual relationship does not give rise to a tort remedy, such as one sounding in negligence, "unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). Our Supreme Court concluded, "there is no common law duty of a carrier or its agents to advise an insured concerning the possible need for higher policy limits upon renewal of the policy." Wang, 125 N.J. at 11-12. The Court held that a homeowner's insurer did not have a duty to inform its insureds that their current level of coverage "was inadequate to protect their assets" from a third-party's claim, in light of inflationary trends, rising recoveries, and increased home values. Id. at 16-17. The Court added, "If such a duty would be in the public interest, it is better established by comprehensive legislation, rather than by judicial decision." Id. at 12.

An exception may arise if there is a "special relationship" between the insurance company or its agent and the policyholder. Id. at 15; see also 3 Couch on Insurance § 46:61 (3d. ed.) (stating a duty to advise a policyholder about the adequacy of a policy's coverage may arise when a special relationship exists between the insurer or its agent and the policyholder). A special relationship can exist through evidence of "an inquiry or request by the insured or a specific representation by the agent or broker." Wang, 125 N.J. at 18; see also 3 Couch

on Insurance § 46:61 (stating that to establish a special relationship creating a duty to advise about adequacy of insurance, "there must be a long-standing relationship between the parties, some type of interaction on the question of coverage, and reliance by the insured on representations of the insurance agent to the insured's detriment").

Yew has not established a basis for finding a special relationship between FMI and himself that would give rise to a duty to inform him of the need to buy sump pump coverage, or to inform him annually of the option to do so. Yew has presented no evidence that he consulted with FMI regarding any special insurance needs, nor that FMI made any representations to him about the adequacy of his coverage. We reject the notion that because FMI provided notice to Yew in 2012, it was obliged to provide similar notices every year thereafter. As the notice stated, it was prompted by a consolidation of sump pump coverages in a single endorsement.[1] The notice informed Yew that his underlying policy form excluded sump pump coverage. Yew does not contend that the exclusion itself was somehow unclear or ambiguous. He had no reason

---

[1] The record does not reflect how sump pump coverage was handled before that, for example, whether some limited coverage was included in the policy, and additional coverage had to be purchased through an endorsement. Neither party provided a copy of the pre-notice policy.

A-4947-18T3

to assume his policy included coverage in subsequent years without purchasing the endorsement.

To the extent not addressed, Yew's remaining points lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION